# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KYLE SPUHLER AND NICHOLE SPUHLER,**
on behalf of themselves and all others similarly situated,

    Plaintiffs,

  v.                                                     Case No. 16-CV-1149

**STATE COLLECTION SERVICES, INC.,**

    Defendant.

## DECISION AND ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Kyle and Nichole Spuhler filed a single count complaint against State Collection Services, Inc. alleging that a debt collection letter sent to them violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* The Spuhlers have filed a motion for class certification. The motion has been fully briefed and is ready for resolution. For the reasons more fully explained below, the Spuhlers' motion is granted.

## FACTUAL BACKGROUND

The Spuhlers allege that prior to the filing of this case, they incurred a consumer debt as that term is defined in 15 U.S.C. § 1692a(5) with certain medical providers. (Am. Compl. ¶ 8, Docket # 18.) State Collection is attempting to collect on those medical debts. (*Id.* ¶ 9.) The Spuhlers contest the validity of the dollar amounts being sought by State Collection. (*Id.* ¶ 10.) The Spuhlers allege that in the year preceding the filing of this case, State Collection sent them various collection letters. (*Id.* ¶ 11.) The Spuhlers allege that included in those collection attempts were amounts for prejudgment interest; however, no state court had

awarded a judgment or prejudgment interest. (*Id.* ¶ 12.) The Spuhlers allege that the collection letters they received did not disclose that interest was accruing at the rate of 5%, that the dollar amount sought could be higher if not immediately paid, that the dollar amount due would or could vary because of the accrual of interest, and what part of the dollar amount sought was interest. (*Id.* ¶ 13.) The Spuhlers allege that the collection letters violate the FDCPA in various ways, including, but not limited to, 15 U.S.C. §§ 1692e, 1692e(2)(a), and 1692f(1). (*Id.* ¶ 25.)

The Spuhlers seeks to certify a class in this action. They seek certification of three sub-classes as follows:

> Sub-Class A: All consumers in the State of Wisconsin who received letters from defendant on medical debts owed to Prohealthcare Medical Associates, Waukesha Memorial Center, or Waukesha Memorial Hospital, Inc. within one (1) year from the date of the filing of this action: Attempting to collect an amount including prejudgment interest when prejudgment interest has not yet been awarded by a court.
>
> Sub-Class B: All consumers in the State of Wisconsin who received letters from defendant on medical debts owed to Prohealthcare Medical Associates, Waukesha Memorial Center, or Waukesha Memorial Hospital, Inc. within one (1) year from the date of the filing of this action: Where such letters attempted to collect an amount without disclosing that interest is accruing on the balance due and that the balance may either increase or vary.
>
> Sub-Class C: All consumers in the State of Wisconsin who received letters from defendant on medical debts owed to Prohealthcare Medical Associates, Waukesha Memorial Center, or Waukesha Memorial Hospital, Inc. within one (1) year from the date of the filing of this action: Attempted to collect an amount that does not disclose the balance due because undisclosed interest is accruing on the amount due.

(Pl.'s Br. at 1-2, Docket # 45.)

**ANALYSIS**

There are four threshold requirements applicable to class certification: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Once numerosity, commonality, typicality, and adequacy of representation are satisfied, "the potential class must also satisfy at least one provision of Rule 23(b)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Here, the applicable provision is Rule 23(b)(3), which requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of showing that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

*1.     Standing*

State Collection argues the Spuhlers lack standing to represent any putative class that allegedly paid "improper charges or fees" to State Collection. (Def.'s Br. at 5, Docket # 54.) State Collection argues because the Spuhlers do not allege that they actually paid any improper sum to State Collection and allege only a statutory claim, they have not suffered an "injury in fact" because they have failed to allege any concrete harm arising from State Collection's alleged conduct. (*Id.* at 7.) To satisfy Article III standing, a plaintiff must allege that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

State Collection relies primarily on the Supreme Court's more recent case on standing, *Spokeo*, and the Seventh Circuit's post-*Spokeo* case of *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017) in support of its proposition that the Spuhlers lack standing because they allege a mere statutory violation. In *Spokeo*, the plaintiff filed a class-action complaint against Spokeo, alleging that it willfully failed to comply with Fair Credit Report Act ("FCRA") requirements by publishing inaccurate information about him. 136 S. Ct. at 1544. He asserted that his Spokeo profile improperly indicated "that he is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree," though he did not allege that this false information was actually used to his detriment. *Id.* at 1544, 1546.

The Court began its analysis by reviewing the general principles of Article III standing, specifically, the injury-in-fact requirement. It noted that while Congress has identified and elevated certain intangible harms to constitute concrete injuries, "a bare procedural violation, divorced from any concrete harm, [is insufficient to] satisfy the injury-in-fact requirement." *Id.* at 1549. Applying these standards, the Court recognized that in passing the FCRA, Congress "plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Id.* at 1550. Yet, the Court concluded the plaintiff could not satisfy the demands of Article III by alleging a bare procedural violation of the statute that did not result in harm or present any material risk of harm. *Id.* The Court did not find, however, that the plaintiff lacked standing. Rather, the Court remanded the case to the Ninth Circuit to determine whether the plaintiff's

4

allegations of a procedural violation "entails a degree of risk" sufficient to meet the concreteness requirement. *Id.*

In *Gubala*, the plaintiff filed a class action lawsuit against a cable company, alleging that the company violated the Cable Communications Policy Act ("CCPA") when he discovered the company had failed to destroy his personally identifiable information nearly ten years after he cancelled his cable subscription. 846 F.3d at 910. He asserted that "the retention of the information, on its own, has somehow violated a privacy right or entailed a financial loss." *Id.* The court recognized that there was a risk of harm but found that Gubala had "failed to show . . . even a remote probability" that Time Warner's conduct was harmful to him. *Id.* at 912. The court held that Gubala lacked standing to bring his suit, due to "the absence of allegation let alone evidence of any concrete injury inflicted or likely to be inflicted on the plaintiff as a consequence of Time Warner's continued retention of his personal information." *Id.* at 913.

Chief Judge William Griesbach recently addressed the issue of standing in the context of the FDCPA. In *Pogorzelski v. Patenaude & Felix APC*, No. 16-CV-1330, 2017 WL 2539782, at *4 (E.D. Wis. June 12, 2017), the plaintiff brought suit against the defendants for violations of the FDCPA. She alleged that she received a debt collection letter that contained a statement "If you wish to avoid further collection activity, please contact us at (866) 606–3290." She alleged that this statement was false, deceptive, and misleading because it suggests to an unsophisticated consumer that the only way to prevent further collection activity was to call the defendant. The plaintiff alleged that the defendant denied her the right to certain information due to her under the FDCPA. She sought statutory

damages, attorneys' fees, and costs on behalf of herself and a putative class pursuant to 15 U.S.C. § 1692k.

The defendants moved to dismiss the complaint, arguing that the plaintiff lacked standing to sue because she failed to allege that she suffered a concrete injury. Citing to *Spokeo*, Judge Griesbach found that the plaintiff alleged a concrete injury-in-fact. Judge Griesbach began by recounting the history of the FDCPA, which was intended by Congress to eliminate abusive debt collection practices by debt collectors and to protect consumers against debt collection abuses. 2017 WL 2539782, at *3. He noted that the FDCPA creates a private right of action for consumers who receive communications that violate the Act so that they may vindicate their rights and stated that the FDCPA, "in essence 'enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.'" *Id.* (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008)).

Judge Griesbach found that the FDCPA was intended to deter debt collectors, like the defendants, from making false representations to unsophisticated consumers, like the plaintiff. *Id*. He found that the defendants' alleged violation of the plaintiff's right to receive certain required information under the FDCPA was not hypothetical or uncertain and although her alleged injury may not have resulted in tangible economic or physical harm, the "informational injury" the plaintiff alleged was "more than a mere procedural violation." *Id.*

As in this case, the defendants relied on *Spokeo* and *Gubala* for support that the plaintiff lacked standing. Judge Griesbach noted that "an argument can be made that the Supreme Court's decision in *Spokeo* redefined the injury-in-fact requirement by requiring a complaint to allege that a statutory violation caused a 'material risk of harm' before a plaintiff may bring a suit." *Id.* at *4. However, Judge Griesbach also noted that numerous other courts, both from this circuit and from around the country, have rejected *Spokeo*-based standing challenges in the context of FDCPA violations. *See id.* (collecting cases). He found that the *Spokeo* Court "did not categorically preclude individuals from asserting that a defendant violated statutorily-mandated procedures. Instead, it clarified that only certain violations may create a concrete injury necessary for standing." *Id.* He found that there was "a meaningful distinction between a violation of a specific statutory interest recognized by Congress, such as the right to truthful information in debt collection communications, and in a procedural infraction that may not materially harm that interest, such as an incorrect zip code." *Id*

Judge Griesbach further found that while the provisions at issue in *Gubala* imposed a "host of technical, procedural requirements," the FDCPA's purpose is to "protect consumers from certain harmful debt collection practices and create a private right of action for consumers, namely, the right to be free from 'false, deceptive or misleading' information." *Id.* at *5. He found that the collection letter at issue that allegedly contained false information was precisely the type of harm Congress "sought to curb" in enacting the FDCPA. *Id.* (citing *Spokeo*, 136 S. Ct. at 1550). Thus, Judge Griesbach found the plaintiff need not allege any additional harm beyond the statutory violation identified by Congress and thus she pled a concrete injury-in-fact and had standing to sue. *Id.*

I find Judge Griesbach's reasoning persuasive and adopt it in this case. The Spuhlers allege that State Collection violated their rights under the FDCPA by failing to properly disclose: (1) the balance due on collection letters sent, (2) the accrual of prejudgment interest, and (3) that the amount due would vary based on prejudgment interest. (Am. Compl. ¶ 25.) They further allege that State Collection failed to properly break out what part of the balance due was principle versus interest, failed to use any form of the "safe harbor" language approved by the Seventh Circuit related to collection letters with balances that are accruing interest, and improperly charged pre-judgment interest when no court had yet awarded prejudgment interest under state law. (*Id.*) As in *Pogorzelski*, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing. Thus, I find that the Spuhlers have standing to sue in this case.

2.   *Class Certification*

2.1   Numerosity

In general, for classes numbering at least 40, joinder is considered impracticable. *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969). State Collection does not contest that there are approximately 36,834 individuals that fall within the putative class definitions set forth in the Spuhlers' brief. (Defs.' Br. at 10.) Thus, State Collection concedes that the numerosity predicate is satisfied. (*Id.*) Accordingly, the Spuhlers have satisfied the numerosity requirement.

### 2.2 Commonality

The commonality requirement of Rule 23(a)(2) is usually satisfied when there exists "[a] common nucleus of operative fact." *Rosario*, 963 F.2d at 1018 (citation omitted). State Collection argues that the Spuhlers cannot meet the commonality requirement as to Sub-Class A because resolution of the allegedly common legal question (whether interest was properly assessed to the putative Sub-Class A members' accounts) will require individualized inquiry for each class member. (Defs.' Br. at 12-17.) As to Sub-Class B and C, State Collection argues that there is no commonality because the Spuhlers did not pay any illegal charges or fees, whereas they allege that the putative class members did. (*Id.* at 17.)

State Collection's argument against both commonality and typicality as to Sub-Class A goes to the heart of its legal defense—that interest was properly assessed on the Spuhlers' debt pursuant to Wisconsin law and nothing in the FDCPA requires a debt collector to disclose that interest has accrued, might accrue, or to break out what part of the balance due was principle versus interest. (Defs.' Br. in Supp. of Summ. Judg. at 23, Docket # 60.) This argument, however, goes to the merits of the Spuhlers' claims, not to the commonality or typicality of the claims. The Spuhlers' complaint alleges that State Collection engaged in standardized conduct by mailing to the proposed class members illegal form letters. The Seventh Circuit has found that a "[c]ommon nuclei of fact are typically manifest where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citations omitted). Whether the form letters or documents were truly illegal under the FDCPA is a matter for another day. As to Sub-Class B and Sub-

Class C, again, the common nucleus of operative facts is the receipt of the allegedly illegal form letters, not whether the Spuhlers actually paid the fees or charges. Thus at this stage, the commonality requirement is satisfied.

### 2.3 Typicality

The Rule 23(a)(3) typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. 'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted). Moreover, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." *Id.*

State Collection raises the same argument on the merits of the Spuhlers' claim to argue against typicality. Again, whether the Spuhlers will ultimately prevail under the legal theory put forth is not at issue at this stage. The Spuhlers' claims arise from the same course of conduct which gives rise to the other class members' claims; namely, that each received a form letter from State Collection that violated the FDCPA by failing to disclose the balance due, by failing to disclose the accrual of prejudgment interest, and by failing to disclose that the amount due would vary due to prejudgment interest. Each class members' claim relies on the same legal theory under the FDCPA—that State Collection falsely represented the character, amount, or legal status of the debt. Again, even if the Spuhlers' legal theory

10

ultimately fails, both the Spuhlers and members of the putative class are raising the same legal theory. Thus, I find the typicality requirement is satisfied.

### 2.4 Adequacy

Rule 23(a) requires the class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is composed of two parts: "'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (quoting *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986) (en banc)). Moreover, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.* "A class may not satisfy the requirements of Rule 23(a)(4) if the class representative does not 'possess the same interest and suffer the same injury as the class members.'" *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002) (citation omitted). Thus, the court must ensure that "there is no inconsistency between the named parties and the class they represent." *Id.*

Finally, a class representative must be a "conscientious representative plaintiff." *Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991). In order to meet this standard, "a class representative need only possess general knowledge of the case and participate in discovery." *Thompson v. City of Chicago*, No. 01 C 6916, 2002 WL 1303138, at *6 (N.D. Ill. June 12, 2002). "There is no requirement that the representative plaintiff be knowledgeable of either the allegations or the legal theories on which the lawsuit rests." *Paper Sys., Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 609 (E.D. Wis. 2000).

State Collection does not object to the adequacy of the Spuhlers' counsel. Rather, State Collection argues the Spuhlers are inadequate class representatives because they lack credibility and lack understanding of the basis of their claims. (Defs.' Br. at 22-23.) But the "burden of establishing [adequacy] is not heavy." *Thompson*, 2002 WL 1303138, at *6. Again, the class representative need only possess general knowledge of the case and participate in discovery. *Id.* The Spuhlers were deposed in this matter and although I agree that Kyle Spuhler showed very little knowledge about the facts of his own case, including stating that he had not seen the collection letter at issue prior to his deposition (Declaration of Patrick D. Newman ("Newman Decl.") ¶ 2, Exh. A, Deposition of Kyle Spuhler at 62, Docket # 56-1), he did understand the basic premise of the case—that he was seeking to represent "[s]imilar people to myself" and testified that they were similar because they "[i]ncurred a debt through State Collection." (*Id.* at 15.) Similarly, Nichole Spuhler testified about the basic facts of the case, including receiving the collection letters from State Collection and attempting to verify the debts. (Newman Decl. ¶ 3, Exh. B, Deposition of Nichole Spuhler at 61-63, Docket # 56-2.) Thus, I find the Spuhlers meet the adequacy requirement.

    3.    *Rule 23(b)*

After satisfying the prerequisites to class certification, "the potential class must also satisfy at least one provision of Rule 23(b)." *Rosario*, 963 F.2d at 1017. The plaintiffs rely on Rule 23(b)(3). In order to qualify for certification under Rule 23(b)(3), the court must be satisfied that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.

Civ. P. 23(b)(3). In making predominance and superiority determinations, the court should assess "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action." *Id.*

The proposed class in this case meets the requirements of Rule 23(b)(3). As to predominance, common questions of law and fact predominate over any individual questions. As explained above, each member of the class received a form letter from State Collection that allegedly violated the FDCPA by failing to disclose the balance due, by failing to disclose the accrual of prejudgment interest, and by failing to disclose that the amount due would vary because of prejudgment interest. Again, each class members' claim relies on the same legal theory under the FDCPA—that State Collection falsely represented the character, amount, or legal status of the debt. This is a common question, regardless of individual experiences.

As to superiority, State Collection argues that a class action is not the superior method of litigating the issues because the Spuhlers limited the purported classes to people who received the collection letter on medical debts owed to Prohealthcare Medical Associates, Waukesha Memorial Center, or Waukesha Memorial Hospital, Inc. State Collection argues that because the Spuhlers did not include all potential consumers who received the allegedly offending letter, even if State Collection wins on the merits, it will be open to lawsuits from individuals with debts to creditors other than the three listed ones. State Collection further argues that the putative class members stand to receive

approximately $0.37 in damages (as opposed to a maximum recovery of $1,000 apiece if they litigated their claims individually) and this *de minimis* recovery illustrates the inferiority of proceeding as a class action. (Defs.' Br. at 26-30.)

As an initial matter, "a de minimis recovery (in monetary terms) should not automatically bar a class action." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). As the *Mace* court noted, the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* The *Mace* court further noted that in an FDCPA case, while the statute allows for individual recoveries of up to $1,000, this "assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives." *Id.* Further, as the Spuhlers acknowledge, it is unclear at this point the exact number of consumers that will comprise the class because they do not know how many duplicate letters were received. (Pls.' Reply Br. at 12, Docket # 67.) Thus, State Collection's calculation of a $0.37 per person recovery will likely change.

State Collection's first argument, however, warrants more consideration. In its class action complaint, the Spuhlers allege a class that included all consumers who received the allegedly violative letter. In its class certification briefing, however, the Spuhlers limited the class to include only those consumers who owed debts to Prohealthcare Medical Associates,

14

Waukesha Memorial Center, or Waukesha Memorial Hospital. (Pl.'s Br. at 2.) Amending the class at the class certification stage, in and of itself, is not problematic. *See Drinkman v. Encore Receivable Mgmt.*, No. 07-CV-363, 2007 U.S. Dist. LEXIS 89514, *7 (W.D. Wis. Dec. 3, 2007) (the court amended the class definition in order to remedy the definiteness issue without denying class certification).

State Collection is correct, however, that there is authority for denying class certification when the plaintiff chooses to limit the class by creditor. In *Guevarra v. Progressive Financial Services, Inc.*, No. C-05-3466, 2006 U.S. Dist. LEXIS 89193 (N.D. Cal. Nov. 30, 2006), the plaintiff initially sought class-wide relief on behalf of all debtors who received a letter allegedly violating the FDCPA. However, the plaintiff subsequently amended her complaint to seek relief on behalf of a class of recipients of the offending letter indebted to IKEA, only one of the creditors. In evaluating the superiority prong of Rule 23(b)(3), the court found that the "creditor-specific class" of "IKEA only" would "encourage piecemeal litigation" because it failed to include all potential customers who received the allegedly illegal letters. The court further found that the IKEA-only class exposed the defendants to the risk of "one-way intervention," meaning the inability to bind all of the absent class members. The court concluded that the plaintiff's distinction between IKEA and non-IKEA creditors was arbitrary and she offered no justification for limiting the case to a specific creditor. The court stated that the case hinged on claims under the FDCPA arising out of the form of the letters, not the nature of the underlying debts. The court denied the plaintiff's motion for class certification.

Similarly, in *Wenig v. Messerli & Kramer P.A.*, No. 11-CV-3547, 2013 U.S. Dist. LEXIS 39013 (D. Minn. Mar. 21, 2013), the plaintiff failed to pay a debt owed to Capital

One Bank. The defendant sent the plaintiff collection letters allegedly violating the FDCPA, and sent substantially identical letters to thousands of other consumers in Minnesota. The plaintiff's proposed class included consumers in Hennepin County who received the letter and owed a debt to Capital One Bank. In denying plaintiff's motion for class certification, the court noted that the plaintiff's limitations of the proposed class based on geography and creditor made "little sense" because all consumers who received the allegedly offending letter suffered the same violation. The court noted, citing the Seventh Circuit's decision in *Mace*, that a proposed class need not always include all possible class members, however, the court found that the "highly artificial limitations . . . deprive the class-action device of much of its utility." *Id.* at *18.

There is also authority, however, to support limiting the proposed class. In *McCurdy v. Professional Credit Service*, No. 15-CV-1498, 2016 WL 5853721 (D. Or. Oct. 3, 2016), the plaintiff sought to certify a class that was limited to consumers who received an allegedly violative letter under the FDCPA between April 1, 2015 and April 30, 2015. The defendant argued that the proposed class did not meet the superiority requirement because the limitation to individuals who received letters in April 2015 created an arbitrary sub-class and opened the door to serial class action lawsuits. The *McCurdy* court noted that debt collectors had made the same policy argument before in a "handful" of district court cases, "with mixed results." *Id.* at *5. The court specifically noted the *Guevarra* case. In rejecting the defendant's superiority argument, the *McCurdy* court was persuaded by dicta from the Seventh Circuit's decision in *Mace*.

In *Mace*, the Seventh Circuit was presented with the question of whether the FDCPA authorized state-wide (as opposed to nation-wide) class actions. 109 F.3d at 341. The

FDCPA provides statutory damages caps in class actions of the lesser of one percent of a debtor collector's net worth or $500,000. 15 U.S.C. 1692k(a)(2)(B). Thus, the larger the class, the smaller each individual class member's potential recovery. The district court had declined to certify a statewide class on the grounds that allowing state-by-state suits to proceed would nullify the FDCPA's statutory damages cap. *Mace*, 109 F.3d at 344. The Seventh Circuit rejected that argument, noting that other statutes, including the Truth in Lending Act ("TILA"), expressly apply the statutory damages cap to "any class action or series of class actions arising out of the same failure to comply by the same creditor." *Id.* at 342. The *Mace* court noted that TILA's reference to a "series of class actions" was absent from the FDCPA; thus, the plain text of the FDCPA did not preclude multiple class actions. *Id.* at 344.

However, the *Mace* court also stated as follows:

The defendants, however, advance a policy argument, from which the district court constructed a requirement for a nation-wide class. The district court reasoned that, if the damage cap of $500,000 can be applied anew to a series of state-wide (or otherwise limited) class actions, the damage limitation would become meaningless. This contention may be correct as far as it goes, although there is, of course, no way of telling whether such repeated class actions are possible or likely, here or generally. The other side of the coin is that to require a nation-wide class as the district court did here brings with it other problems that will be discussed later. There are other possible problems with the district court's reasoning. The FDCPA has a short, one-year statute of limitations making multiple lawsuits more difficult. Further, if a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations. Given the uncertainty of those policy considerations, there is no compelling reason to ignore the plain words of the statute. In any event, the case before us does not now present multiple or serial class actions to recover for the same misconduct. Hence, it would be premature to require a nation-wide class at this juncture. If and when multiple serial class actions are presented, it will be time enough to rule on such a pattern. At this point, there is no persuasive reason to require a nation-wide class.

17

*Id.* at 343-44. Following the *Mace* court's reasoning, the *McCurdy* court found that the plaintiff's limitation of the class did not cut against the superiority of a class action. The court found that if there truly were multiple lawsuits based on the same underlying conduct, this would be an appropriate factor to consider in evaluating superiority. *See* Fed. R. Civ. P. 23(b)(3)(B) (expressly directing the consideration of any related, ongoing litigation). Further, the *McCurdy* court found that Rule 23(b) asks the court to consider whether a class action is superior to other available methods for adjudicating the controversy; thus, the relevant comparison is between the proposed class action and other methods of litigation, not between the proposed class action and other, hypothetical class actions. 2016 WL 5853721, at *5. Thus, the *McCurdy* court stated that it need not deny class certification "based on the mere possibility another class action will be filed." *Id.*; *see also Whitten v. ARS National Services, Inc.*, No. 00 C 6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) (granting motion for class certification where class was limited to persons who allegedly owed debts to Citibank, where the original complaint was not creditor-specific).

I find that a class action is the superior method for litigating this case given the considerations listed in Rule 23(b)(3). This case is based on the text of form letters, in which individual damages for any given class member would be low, making the cost of litigation difficult for class members to address individually. The parties have identified no ongoing, related litigation and the case presents no apparent manageability problems. Thus, the Spuhlers have shown the class satisfies Rule 23(b)(3).

## CONCLUSION

For the reasons explained in this decision, the Spuhlers have satisfied the requirements of Rule 23(a) and 23(b)(3). Thus, the plaintiffs' motion to certify a class is granted.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion to certify class (Docket # 39) is **GRANTED**.

**IT IS FURTHER ORDERED** that the following class be and hereby is certified:

Sub-Class A: All consumers in the State of Wisconsin who received letters from defendant on medical debts owed to Prohealthcare Medical Associates, Waukesha Memorial Center, or Waukesha Memorial Hospital, Inc. within one (1) year from the date of the filing of this action: Attempting to collect an amount including prejudgment interest when prejudgment interest has not yet been awarded by a court.

Sub-Class B: All consumers in the State of Wisconsin who received letters from defendant on medical debts owed to Prohealthcare Medical Associates, Waukesha Memorial Center, or Waukesha Memorial Hospital, Inc. within one (1) year from the date of the filing of this action: Where such letters attempted to collect an amount without disclosing that interest is accruing on the balance due and that the balance may either increase or vary.

Sub-Class C: All consumers in the State of Wisconsin who received letters from defendant on medical debts owed to Prohealthcare Medical Associates, Waukesha Memorial Center, or Waukesha Memorial Hospital, Inc. within one (1) year from the date of the filing of this action: Attempted to collect an amount that does not disclose the balance due because undisclosed interest is accruing on the amount due.

Dated at Milwaukee, Wisconsin this 26th day of October, 2017.

                                              BY THE COURT:

                                              *s/Nancy Joseph*
                                              NANCY JOSEPH
                                              United States Magistrate Judge