UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

Kyle Spuhler and Nichole Spuhler on
behalf of themselves and all others
similarly situated,

                          Plaintiffs,

       vs.                                      Case No. 16-cv-1149

State Collection Services, Inc.,

                          Defendant.

**PLAINITFFS' BRIEF IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS PURSUANT TO 15 U.S.C. §1692k(a)(3)**

## INTRODUCTION

    This Memorandum is submitted in support of Plaintiff Kyle and Nichole Spuhler (hereinafter "Plaintiffs") Motion for Attorney's Fees and Costs as they successfully brought an action to enforce liability under the Fair Debt Collection Practices Act – 15 U.S.C. §1692k(a)(3). This brief is provided in the context that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

    Counsel has been working on this case for several years – on a contingency basis. Through countless discovery battles, a short-lived appeal, and a bevy of motions, including class certification and multiple dispositive motions, counsel has diligently represented the class. In the end, Plaintiffs have prevailed on all fronts and achieved the maximum statutory damages permitted under law. Plaintiffs' Counsel now seeks to be paid for their services on behalf of their clients and the 31,045 member class. Counsel seeks $210,083.45 in attorney's fees and $34,341.35 in costs.

# BACKGROUND

The Stalingrad defense of Defendant is evidenced by the docket. However, a brief review sets a helpful context for this fee petition. Plaintiffs alleged that Defendant sent them collection letters in violation of the Fair Debt Collection Practices Act ("FDCPA"). Dkt. 1, ¶¶ 21-23, Dkt. 18, ¶¶ 24-26. Plaintiffs, on behalf of the class, alleged that Defendant had failed to properly disclose that interest was accruing on the debts referenced in collection letters. Despite the threat and specter of Defendant seeking fees and costs against Plaintiffs from the outset (Dkt. 19, ¶¶ 38(D) and 40) they moved for certification of the proposed class (Dkt. 39), which was granted (Dkt. 74). Defendant prematurely moved for summary judgment (Dkt. 59) in July, 2017. After briefing, the Court denied this motion in part, holding that triable issues of fact remained. (Dkt. 84). Defendant sought reconsideration of the denial; resulting in the Court *sua sponte* entering judgment in favor of the class. Dkt. 102. From there, the Court entered judgment against Defendant. Dkt. 104. Defendant disagreed with this reconsideration and appealed the decision to the Seventh Circuit Court of Appeals. Dkt. 107. This appeal was short-lived, as Defendant was unable to prove any jurisdictional basis for their appeal. After more litigation and briefing the Class Notice was approved and notice went out to the certified class of approximately 31,045 individuals. Dkt. 127. To date, 81 individuals have opted out of the class. *See* Declaration of Patrick Hughes (hereinafter "Hughes Dec.") ¶11.

# ARGUMENT

**A. COUNSEL IS ENTITLED TO RECOVER ATTORNEY'S FEES**

The Fair Debt Collection Practices Act provides for an award of attorneys fees and costs. 15 U.S.C. §§1692k(a)(3). In passing the FDCPA, Congress stated its purpose was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection practices." To this end, the Act expressly prohibits debt collectors from engaging in numerous specific acts or practices in attempting to collect consumer debts for others. This Court has found that the collection letters used by Defendant are in violation of the FDCPA, therefore fees must be awarded.[1]

The Seventh Circuit has held that an award of attorney's fees is mandatory. *Tolentino v. Friedman*, 46 F.3d 645, 651-652 (7th Cir. 1995) ("Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.") (quoting *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). Furthermore, "[C]ongress has determined that the public as a whole has an interest in the vindication of the [FDCPA] statutory rights." *Tolentino* at 652. As such, Counsel for Plaintiffs and the Class seeks their reasonable fees and costs incurred in this case to date.

**B. PLAINTIFF'S ATTORNEYS ARE TO BE AWARDED FEES PURSUANT TO THE LODESTAR FORMULA**

The U.S. Supreme Court has explained in calculating an award of attorney fees, "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's

---

[1] Defendant's dogmatic disagreement with this holding is evident in their continued use of the violative letters. Dkt. 126, p. 6. While perhaps their strategy was an attempt to dilute (and therefore negate) the class, the results shows an continued willingness to violate the FDCPA.

3

services." *Hensley* at 433.[2] Although *Hensley* did not arise in relation to the FDCPA, the approach is applicable here. "The standards set forth this in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Id*. at, n.7. "We have stated in the past that fee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, n. 2 (1989) (quoting *Northcross v. Memphis Bd. of Education*, 412 U.S. 427, 428; (1973)). The multiplication of the reasonable number of hours expended times the reasonable hourly rate is referred to as the "lodestar." *Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1441 (3d Cir. 1988). However, "The amount of the fee, of course, must be determined on the facts of each case." *Hensley* at 1937. As discussed below, both the hourly rate and time expended was necessary and reasonable for the claims, discovery, and motion practice related to Defendant.

## C.  THE HENSLEY FACTORS

While perhaps tedious, a review of each *Hensley* factor is instructive. Each factor either tips the scale in favor of Counsel for the Class or is otherwise neutral to both parties. As such, Counsel for the Class should be awarded their full fees in this matter.

---

[2] "The 12 factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d, at 717-719. These factors derive directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2-106 (1980)."

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, (1983).

1. *<u>Time and Labor Required</u>*

Time expended on claims related to Defendant fall into general categories: i) discovery, ii) class certification, iii) summary judgment and appeal.

    i.   *Discovery*

Defendants are certainly entitled to contest every inch of the discovery process; but with full knowledge that attorney fees will escalate. See *Armstrong v. Rose Law Firm, P.A.*, 2002 WL 31050583, at *1 (D. Minn. Sept. 5, 2002). Defendant brought a fierce, failing, and eventually futile fight to every front. After the dust settled, Defendant was compelled to produce the data and information Plaintiffs sought from them.[3] While the discovery discussion span scores of emails and countless phone calls, a brief overview is helpful.

Discovery in this case commenced when Plaintiffs served their first discovery requests on October 11, 2016. Declaration of Nathan DeLadurantey (hereinafter "DeLadurantey Dec."), ¶ 3. Defendant responded with pages of boilerplate objections to a variety of the requests. *Id.* ¶ 4. Defendant than attempted to draft a protective order (on confidentiality) that would be acceptable to the Court. *Id.* ¶ 5. Several iterations of proposed orders were thereafter filed with the Court. Dkts. 14, 32, 33. Documents were eventually provided by Defendant.

Defendant eventually served discovery on Plaintiffs. Some of the requests were objectionable, resulting in Plaintiff conferring over these issues. This resulted in a discovery call with the Court on December 21, 2016. Here, the Court provided guidance to the parties on the permissible bounds of discovery. Dkt. 17. From here on out, the case was marked by a number of discovery issues. Defendant contested every step of the case – which was certainly within their

---

[3] Plaintiffs were denied discovery (pre-certification) on the identity of the class members, and as such, are not seeking fees for this work.

discretion. While perhaps fiscally imprudent in the context of attorneys fees, it was within their legal discretion.

Defendant took a (failing) hardline approach related to the production of financial statements in this case. Countless emails, conferrals, and eventually a (failing) motion hearing by Defendant. Dkt. 29. After sorting through issues related to net worth and other discovery, Defendant began to play games on tendering the information necessary to ascertain the size of the class. Eventually the Plaintiffs sought – and were granted – relief from the Court.[4] Dkts. 35, 36, and 38.

Discovery was also conducted in connection with the underlying medical creditors related to the Class. This discovery was comprised of basic written discovery and depositions. A deposition was also conducted of a representative of Huer Law Office in connection with the case. This discovery related to the undisclosed accrual of interest on the medical debts. Such discovery was necessary for purposes of responding to Defendant's premature summary judgment filings. Counsel seeks the amount of time related to discovery related issues in this case, as it relates to the violations of the FDCA as found by this Court.

ii.  *Class Certification*

Plaintiff moved for class certification after sufficient discovery had been conducted. Dkt. 39. Defendant responded, raising a host of objections. Dkt. 54. These objections proved unpersuasive and the Court granted class certification on October 26, 2017. Dkt. 74. The time spent on briefing class certification should be fully compensated as the motion was fully successful and the time expended was reasonable.

---

[4] While Plaintiffs were ordered to share the costs of the production of certain ESI (Dkt. 38, p. 7), the Defendant never provided the costs for reimbursement. This is most likely due to the fact that such costs were marginal.

### iii. *Summary Judgment*

In an effort to kill this case, Defendant prematurely filed for summary judgment. Dkt. 59. The Court stayed this motion, requiring the parties to follow its scheduling order. Dkt. 69. Plaintiffs timely responded to the motion, which was eventually granted in part – and denied in part. Dkt. 84.

Discontent will a partial victory, Defendant asked the Court to reconsider the partial denial of their motion. Dkt. 89. This backfired on Defendant as the Court (*sua sponte*) entered summary judgment against Defendant. Dkt. 102. This entry of summary judgment trigged yet another premature action by Defendant – an appeal to the Seventh Circuit Court of Appeals. Dkt. 107. The premature nature of this appeal was facially evident, and the Court of Appeals required the Defendant to brief threshold issues on the jurisdiction for the appeal. As anticipated, the Court of Appeals rejected Defendant's arguments and sent the case back to this Court. This premature appeal did nothing more than increase the legal fees. Defendant has indicated that they will be appealing the final order issued after this fee petition[5].

The time spent on briefing summary judgment should be fully compensated as the motion was fully successful and the time expended was reasonable. While Defendant was successful in beating down a few counts during summary judgment, it lost the overall case. As the time spent on the briefing is inseparable, the total amount should be awarded. *Crafton v. Law Firm of Jonathan B. Levine*, No. 12-CV-602, 2014 U.S. Dist. LEXIS 29690, at *9 (E.D. Wis. Mar. 7, 2014)(fees permitted when "the claims were based on the same common core facts and related legal theory as the successful claims").

---

[5] As a result, and if successful on the threatened appeal, Counsel for Plaintiffs will be seeking additional fees and costs.

## 2. *Novelty and Difficulty of the Questions*

The issue presented in the case (failure to disclose the accrual of interest) has been ruled on. "It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) (internal citations omitted). In particular, the Seventh Circuit has provided safe-harbor language that debt collectors may use when opting to charge and accrue interest on unpaid balances. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000),

Defendant has been over-eager to appeal this case for months – as evidenced by their first premature appeal. It has already indicated it will be appealing the final judgment entered after this fee petition is decided. Given the ever-changing landscape and application of the FDCPA, Counsel for the Class must be experienced in the application of that particularized body of law. Declaration of Thomas J. Lyons, Jr. (hereinafter "Lyons Dec."), ¶ 6(b).

## 3. *The Skill Requisite to Perform the Legal Service Properly*

Plaintiffs' counsel advanced and fully protected the interests of the Class in their prosecution of this case – standing their ground and refusing to surrender to defense counsel's[6] skillful and zealous representation of its client. Despite the fierce opposition, Plaintiffs' counsel was able to bring this case to a just resolution for the class – including the maximum allowable statutory damages under the FDCPA. The quality of the representation provided by counsel for all parties is another factor that supports the reasonableness of the requested fee.[7] Given the skill and stalwart defense, and the resulting victory for the Class, the representation requires full compensation.

---

[6] Counsel for Defendant employed at least 4 attorneys on this case. DeLadurantey Dec. ¶ 6.
[7] Some districts within our circuit, for example Illinois, have an approach that may be helpful in this case. If a party objects to the fee petition, they must disclose their hourly rates and time billed. It could be a helpful comparison in this case, and Plaintiffs ask the Court to consider this.

This case involved class action discovery – with an added twist related to addressing a number of issues on creating the right search criteria to identify the correct class members from Defendant's records. Dkts. 35, 36, and 38. The parties engaged in extensive discussions (and some motion practice) to properly identify the class members. Counsel for the Class had to consult with industry experts to properly query (and verify) the data from Defendant. Defendant responded with hostility during these conferrals, implying that Plaintiffs' counsel consulted with criminals during the discovery process. DeLadurantey Dec. ¶ 7.

Further, counsel had to properly manage and prepare the class representatives to fulfill their duties in this case. Defendant mounted a frontal assault on the Plaintiffs' capabilities and performance as class representatives. Dkt. 80. As skilled litigators, counsel for Defendant pursued Plaintiffs heavily in their lengthy depositions. Plaintiffs' counsel relied on years of experience (in both class and consumer cases) in order to adequately litigate and represent Plaintiffs and the class. The experience to manage the onslaught of litigation from Defendant's skilled litigators is no entry-level or benign undertaking – and one that Counsel successfully combated. As such, Counsel for the Class should be fully compensated for their time.

4. *<u>Preclusion of Employment by the Attorney Due to Acceptance of the Case</u>*

Counsel for the Class are both from small firms (1 and 2 lawyer firms, respectively). Managing a fiercely contested class case certainly restricted their ability to spend time billing other clients. In particular, Attorney DeLadurantey spent meaningful time before (7am) and after (6pm) business hours writing briefs, dealing with discovery, and otherwise addressing case management issues on this matter. DeLadurantey Dec. ¶ 8. Even if he cannot point to a specific case that was declined due to handling this matter, it certainly impinged on his ability to manage his other cases during normal business hours.

### 5. *Customary Fee*

The customary fees in a case with statutory fee shifting are based on a lodestar calculation, and the Seventh Circuit has held that an award of attorney's fees is mandatory. *Tolentino v. Friedman*, 46 F.3d 645, 651-652 (7th Cir. 1995) ("Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.") (quoting *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). "[C]ongress has determined that the public as a whole has an interest in the vindication of the [FDCPA] statutory rights." *Tolentino* at 652. As "private attorneys general," counsel for the Class should be paid the reasonable value of their time expended on this case.

The customary fee in a fee shifting case is the number of hours expended, multiplied by the hourly rates. Fee awards in FDCPA cases can range from a few thousand dollars, to tens of thousands of dollars. *Vomberg v. Praxis Fin. Sols., Inc.*, No. 15-CV-1043-JPS, 2016 U.S. Dist. LEXIS 77196 (E.D. Wis. June 14, 2016). The harder a Defendant fights on a case, the higher fees will become. Defendants engage in this style of litigation with the full knowledge that it will result in paying higher fees and costs if they lose. See *Armstrong v. Rose Law Firm, P.A.,* 2002 WL 31050583, at *1 (D. Minn. Sept. 5, 2002).

### 6. *Fee is Fixed or Contingent*

Counsel for the Plaintiffs and Class have been representing them on a contingency basis. DeLadurantey Dec. ¶ 25. *See also*, Lyons Dec. ¶¶ 6(e) and (f). Courts have observed, "[t]he theory behind attorneys' fee awards in class actions is not merely to compensate counsel for their time, but to award counsel for the benefit they brought to the class and take into account the risk

undertaken in prosecuting the action." *In re Monosodium Glutamate Antitrust Litig.*, 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003); *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716460, at *4 (D. Minn. Feb. 27, 2013) (noting that "[a] financial incentive is necessary to entice capable attorneys . . . to devote their time to complex, time-consuming cases for which they may never be paid" and that "[t]o make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding") (citations and internal quotations omitted). Therefore, Counsel for the Class respectfully requests this Court adopt the same rationale, as the time and effort expended by Counsel for the Class supports the requested award for fees and costs.

There certainly a risk in taking cases on a pure contingency basis, hence the established practice to compensate this risk of non-payment by paying a premium over counsels normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). And a "contingency fee arrangement often justifies an increase in the award of attorneys' fees…helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D.Fla. 1988). The Seventh Circuit has endorsed this position, stating:

> when attorneys' receipt of payment is contingent on the success of the litigation, reasonable compensation may demand more than the hourly rate multiplied by the hours worked, for that is exactly what the attorneys would have earned from clients who agreed to pay for services regardless of success. Thus to account for the contingent nature of the compensation, a court should assess the riskiness of litigation.

*Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir.1988).

Counsel for the class has diligently prosecuted this case for over 2 and a half years – all at the risk of not receiving payment. During that time they have paid for depositions, travel costs, and almost $30,000 to the class administrator. While they do not seek a risk multiplier *increasing their fees*, the risk factor heavily tips this factor in favor of a full fee award.

7. *Time Limitations Imposed by the Client or the Circumstances*

See above, related to "4. Preclusion of Employment by the Attorney Due to Acceptance of the Case."

8. *Amount Involved and the Results Obtained*

Counsel has successfully litigated the case through class certification and summary judgment. This represents a total victory related to the recovery of damages for the class – a 100% degree of success on entry of statutory damages to Plaintiffs and the Class. Dkt. 102. Given the 100% degree of damages awarded, counsel should be awarded the commensurate percentage of fees they seek – 100% of those fees.

9. *Experience, Reputation, and Ability of the Attorneys*

Counsel for the Class made good faith attempt to resolve the issue of their reasonably hourly rate prior to this motion. Defendant flatly refused – and in the nature of their approach to this case, accused Counsel's staff of unethical conduct. DeLadurantey Dec. ¶9, Exhibit A. Mr. Webb's mere attempt to make sure he had captured the receipts from a court reporter resulted in a personal attack. *Id*.

    i.    Consumer Justice Law Center

Attorney Thomas J. Lyons, Jr. is a respected litigator that focuses solely on consumer protection and has litigated numerous individual and class actions throughout the country. He has been involved in over 1000 consumer cases in various United States District Courts and numerous

12
Case 2:16-cv-01149-NJ   Filed 02/08/19   Page 12 of 18   Document 130

class actions in which his firm (or himself) has been appointed as class counsel to represent consumers.[8]

Attorney Lyons has been recently and regularly awarded fees at the rate of $450 per hour. Such fees are commensurate with other fee awards in consumer (albeit non-class action) cases in

---

[8] *Jade Johnson and Claude MaGee v. Universal Car Credit Co., Inc. and Jim Lupient Oldsmobile Company*, USDC, Court File No. 3-94-1174; *Davies v. West Publishing Company*, Dakota County District Court, Court File No. 19-C6-99-8478; *David Ofert v. Jacques D. Schira, P.C., Law Office, and Jacques D. Schira, Esq., Individually*, USDC, CV 98-125; *Amy Monson v. Check Guarantee Services, Inc.*, USDC, Court File No. CV 99-1224 MJD/JGL; I*n re American Family Publishers Business Practices Litigation*, MDL Docket No. 1235, District of New Jersey No. 98 CV 3850 (NHP) and *In re American Family Enterprises, et al*, Case No. 99-41774(RG) (State of Minnesota class counsel); *Byrd v. Metropolitan Corporation*, Hennepin County District Court, Court File No.: CT 00-016055; *Reinke v. Harold Chevrolet*, Hennepin County District Court, CT 01-001519; *Avent and Clay v. Alandale Corporation*, Hennepin County District Court, Court File No.: CT00-7438; *Sheryl Lynn Logan et. al. v. Norwest Bank of Minnesota, N.A.*, Hennepin Co. Dist. Court File #94-018688; *Domzalski v. Coldata*, USDC, Court File No.: 01-1883 DSD/SRN; *Jancik v. Account Services*, USDC Western District of Texas – San Antonio Division, C.A. SA-04-CA-0097 RF; *Baier, et al v. FleetBoston Financial*, USDC EDPA, 04-0507; *Keener, et al v. Sears Roebuck,* EDCV-03-01265-RT (SGLx)**;** *Thinesen v. JBC Legal Group, et al*, USDC Minnesota, CV 05-518 DWF/JSM; *Nienaber v. Citibank*, USDC Southern District of South Dakota, 2007 WL 5404595; *Jancik v. Cavalry Portfolio Services, LLC*, No. 06-3104 (D.Minn. July 3, 2007); *Drinkman v. Encore*, USDC Western District of Wisconsin, 07-CV-363-S, December 3, 2007; *Brower v. Financial Crime Services, LLC*, No. 06-cv-4237 (D.Minn. July 25, 2007); *Sleezer v. Chase Bank USA, N.A.*, Civ. No. SA-07-CA-0961 (W.D. Tex. 2009); *DeLa Cruz-Martinez & Porter v. Hellmuth & Johnson*, 08-CV-4289 PJS/FLN USDC Minnesota (July 23, 2009); S*utton v. FCA Restaurant Co., LLC*, 08-cv-05122, USDC District of Minnesota (September 16, 2009); *Johnson v. Kleinsmith & Associates, P.C.*, No. 3:09-cv-03, USDC Eastern District of North Dakota (October 14, 2009); *Pobuda v. Financial Crimes*, 09-cv-1227 DSD/AJB, USDC District of Minnesota (March 11, 2010); *Ebert v. Warner Stellian*, 11-cv-2325 JRT/SER, USDC District of Minnesota (September 19, 2012); *Thompson v. NCA, et al*, 10-cv-2307 SRN/FLN, USDC District of Minnesota (October 24, 2012); *Fischbach v. Pinnacle*, 11-1925 JJK, USDC District of Minnesota (November 16, 2012); *Johnson v. BlackRidgeBANK*, 11-cv-2367 LIB, USDC District of Minnesota (December 28, 2012); *Tandeski v. Coulter*, 3:12-00069-KKK, USDC District of North Dakota (March 4, 2013); *Hupperts v. APOGEE, et al*, 12-cv-915 JNE/TNL, District of Minnesota (April 18, 2013); *Fouks v. Red Wing Hotel*, 12-cv-2160 JNE/FLN, District of Minnesota (June 14, 2013); *Hartley v. Suburban, et al*, 11-cv-2664 JRT/JJG, District of Minnesota (September 30, 2013); *Rouse v. Hennepin County*, 12-cv-326 DWF/SER, District of Minnesota (May 5, 2014); *Gawarecki v. ATM Network*, 11-cv-1923 SRN/JJG, District of Minnesota (June 10, 2014; *Schmitt v. Cornerstone Parking*, 13-cv-2289 DWF/SER, District of Minnesota (June 19, 2014); *St. Clair v. MRB*, 12-cv-1572 MJD/JSM, District of Minnesota (July 9, 2014); *Smith v. Thrift Stores et al*, 1:13-cv-02455-BPG, District of Maryland (October 1, 2014); *Walsh v. Prosser*, 12-cv-2823 PJS/HB, District of Minnesota (October 28, 2014); *Arend v. Innovative*, 14-cv-1243 HB, District of Minnesota (October 31, 2014); *Lund v. John's Pizza*, 14-cv-63 SER, District of Minnesota (November 13, 2014); *Broberg v. DebtArbitrators*, 13-cv-2131 TNL, District of Minnesota (November 5, 2014); B*arton v. SLS*, 13-cv-2366 SRN/FLN, District of Minnesota (November 24, 2014); *Rosen v. Spirit Airlines*, 15-61375-CIV-COHN/SELTZER, Southern District of Florida (October 27, 2015); *Crofoot v. Center for Diagnostic Imaging, et al*, 13-cv-3455 TNL, District of Minnesota (November 20, 2015); *Conradie v. Caliber Home Loans*, 4:14-cv-00430-SBT, Southern District of Iowa (December 21, 2015); *Eggen v. WESTconsin*, 14-cv-873-bbc, Western District of Wisconsin (February 26, 2016); *Cassidy v. Active Sports*, 14-cv-3022 SER, District of Minnesota (April 6, 2016); *Nelson v. BMW Financial et al*, 15-cv-2661 SER, District of Minnesota (March 8, 2017); *Vonasek v. BOTW, et al*, 16-cv-342-DTS, District of Minnesota (January 30, 2018); *Swenson v. WESTconsin*, 16-cv-2344 MJD/HB, District of Minnesota (February 28, 2018); *Love Stone v. Aargon Agency*, 17-cv-2314-KMM, District of Minnesota (May 15, 2018); *Rizzo v. Kohn Law Firm*, 17-cv-408-jdp, Western District of Wisconsin (July 18, 2018); and *Clark v. JP Morgan Chase Bank, et al*, 17-cv-01069 SRN/KMM, District of Minnesota (December 12, 2018).

this district. *Heling v. Creditors Collection Serv.*, No. 15-CV-1274-JPS, 2017 U.S. Dist. LEXIS 89693, at *8-9 (E.D. Wis. June 12, 2017) ($450/hour for counsel with over 20 years of experience).

Worth noting related to the time records of Attorney Lyons, is that "[R]easonable attorneys' fees presumptively include reasonable travel time billed at the same hourly rate as the lawyer's normal working time." *Sweet v. Corp. Receivables, Inc.*, No. 05-CV-0779, 2008 U.S. Dist. LEXIS 61954, (E.D.Wis. July 29, 2008) (*citing Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984). As such, his travel time should be compensated.

ii. Attorneys from DeLadurantey Law Office, LLC

Attorney Nathan DeLadurantey is an experienced consumer rights litigator, and has received recognition for his work in this practice area. DeLadurantey Dec. ¶¶ 10-14. Counsel has had a prior fee awards against the Defendant. See *Gagliano v. State Collection Serv.*, No. 14-CV-1512, 2016 U.S. Dist. LEXIS 63473, at *4 (E.D. Wis. May 13, 2016) ("State Collection Service does not challenge the hourly rates of $300 for attorney Nathan DeLadurantey, $250 for attorney Heidi Miller, and $125 for a paralegal."). *Gagliano* was litigated approximately 2 years prior to this action and was not a class action.

Attorney Miller has been approved by Judge Griesbach in a default judgment hearing, at the rate of $300. DeLadurantey Dec., Exhibit D. Counsel asserts that these hourly rates take into consideration their experience, prior cases, and nature of consumer litigation. Further, and more importantly, the Court should look to the hourly rate of Attorney DeLadurantey's private paying clients. As he regularly has clients pay him $350 an hour for his services, he should not be "dinged" here. While recently awarded fees at the rate of $300 per hour, the decision utterly ignores the fact that the private paying clients of Attorney DeLadurantey regularly pay him $350 per hour. While his rate several years ago (after obtaining a jury verdict against Defendant) were

14

$300 per hour, they have not remained at that rate. The same can be said of Attorney Miller, who was approved by Judge Griesbach at the rate of $300/hour.[9]

10. *"Undesirability" of the Case*

Counsel undertook this case – for years – on a pure contingency basis. At the outset, success on certification and the merits were unknown. Consumer litigation is often a waged as a war of attrition; can counsel survive the endless onslaught from a defense attorney with limitless billable hours to throw at the case. Such is the case here, where at the outset (and throughout) there has been no outcome but full-throttle litigation. No settlement discussions, nor any hope of mitigating the amount of time to fight off every attack from Defendant was possible.

Further, as mentioned above, the Defendant's looming demand of this Court in its Answer to award attorney fees and costs against Plaintiffs clearly would render this case "undesirable". Dkt. 19 ("**Plaintiff's claim is believed to be brought in bad faith and for purposes of harassment as forbidden by the terms of 15 U.S.C. §1692k(a)(3) and Defendant hereby reserves the right to file a separate motion at the conclusion of this action for a claim against Plaintiff for any part or all of the Defendants' attorney's fees in defending this action.**") (emphasis in original).

11. *Nature and Length of the Professional Relationship with the Client*

The nature of the relationship has been one of continued growth and communication as Plaintiffs embraced their role as class representatives and participated over the life of the case.

12. *Awards in Similar Cases*

See "5. Customary Fee."

---

[9] Attorney Miller has left DeLadurantey Law Office, LLC since the filing of this case, and has started her own consumer law practice in the metro area. This underscores the fact that her skill and experience warrant compensation at a rate greater than her 2016 rates.

**D. Costs**

Counsel seeks reasonable costs in the amount of $34,341.35. A detailed description of these costs has been provided by Counsel. *See* Lyons Dec. ¶ 8. *See also*, DeLadurantey Dec. ¶ 24, Exhibit F.

   *1.   Filing and Service Fee*

Plaintiffs assert that these costs should be paid by Defendant under Fed. R. Civ. P. 54 and 15 U.S.C. §§1692k. These fees are $400 and $67, respectively. DeLadurantey Dec. ¶ 24, Exhibit F.

   *2.   Witness, Mileage Fees, and Postage*

As expected, Counsel for the Class deposed a corporate representative of Defendant and incurred depositions costs. Additionally, several non-party depositions were conducted in this case. The first was for Pro-Healthcare, resulting in a compensable witness and service fee of $124.92. Others were for Ms. Zambriski (of ProHealthcare) and Ryan Peterson (Huer Law), for charges of $137.35 and $127.24. Counsel also incurred postage costs (serving subpoenas) in the amount of $27.20. Counsel seeks costs of $416.71 under Fed. R. Civ. P. 54 and 15 U.S.C. §§1692k for this category. DeLadurantey Dec. ¶ 24, Exhibit F.

   *3.   Deposition and Videographer Costs*

Counsel incurred transcription costs for a number of the depositions conducted in this case. As the docket discloses, those transcripts were used (and reasonably necessary) for the case. Further, assessing the cost of videotaped depositions as a taxable cost is expressly permitted by the Seventh Circuit Court of Appeals. *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). As such, Counsel seeks $2,603.99 under Fed. R. Civ. P. 54 and 15 U.S.C. §§16942 for this category. DeLadurantey Dec. ¶ 24, Exhibit F.

### 4. Travel Costs

Counsel seeks a moderate sum of travel costs related to this case, specifically related to Attorney Lyons traveling to Milwaukee to conduct the corporate representative deposition of Defendant in this case and to defend the depositions of Plaintiffs in this case. This travel was necessary – and such that a reasonable fee-paying client would be expected to reimburse their client. As such, Counsel seeks $1,392.61 under Fed. R. Civ. P. 54 and 15 U.S.C. §§1692k, for this category. Lyons Dec. ¶ 8.

### 5. Class Administrator Costs

Given the size of this class, a class administrator was necessary. Plaintiffs retained Rust Consulting to handle that component of the case. Rust Consulting is a qualified class administrator; and Defendant voiced no objection to their service in this capacity. Hughs Dec. ¶ 2. Rust Consulting's fee was $29,463.04 should be reimbursed under Fed. R. Civ. P. 54 and 15 U.S.C. §§1692k for this category. Lyons Dec. ¶ 8.

### **Conclusion**

Counsel respectfully requests an award of $210,083.45 in attorney's fees and $34,341.35 in costs in this case.

Dated this 8th day of February, 2018.

By: /s/ Nathan E. DeLadurantey
Nathan E. DeLadurantey, (WI #1063937)
DELADURANTEY LAW OFFICE, LLC
330 S. Executive Drive, Suite 109
Brookfield, WI 53005
Telephone: (414) 377-0515
Facsimile: (414) 755-0860
nathan@dela-law.com

Thomas J. Lyons, Jr. (MN #0249646)
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN  55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommy@consumerjusticecenter.com

*ATTORNEYS FOR PLAINTIFFS AND CLASS*