# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KYLE SPUHLER AND NICHOLE SPUHLER,**
on behalf of themselves and all others similarly situated,

    Plaintiffs,

  v.                                          Case No. 16-CV-1149

**STATE COLLECTION SERVICES, INC.,**

    Defendant.

## DECISION AND ORDER ON PLAINTIFFS' MOTION
## FOR ATTORNEYS' FEES AND COSTS

Kyle and Nichole Spuhler filed a single count complaint against State Collection Services, Inc. alleging that a debt collection letter sent to them violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* The Spuhlers alleged that the letter was misleading because it (1) improperly attempted to collect interest on the debt, (2) failed to specify which portion of the amount due was interest as opposed to principle, and (3) failed to indicate that interest was accruing on the amount due. Summary judgment was granted in State Collection's favor as to the first two arguments, and, after a motion for reconsideration was filed, summary judgment was granted in the Spuhlers' favor as to the third argument. The Spuhlers now seek attorneys' fees and costs in the amount of $210,083.45 in attorneys' fees and $34,341.35 in costs. State Collection opposes the motion. For the reasons below, the Spuhlers' motion is granted in part and denied in part.

*1. Legal Standard*

Under the FDCPA, a debt collector is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3); *see Tolentino v. Friedman*, 46 F.3d 645, 651–52 (7th Cir. 1995). The general rule for calculating attorneys' fee awards under fee shifting statutes is applicable to attorneys' fees awards under the FDCPA. *Gastineau v. Wright*, 592 F.3d 747, 748–49 (7th Cir. 2010). The starting point for determining reasonable attorneys' fees is the lodestar method, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal citation omitted); *Pickett*, 664 F.3d at 639. However, once the lodestar is determined, the court may adjust the fee upward or downward based on a variety of factors, the most important of which is the degree of success obtained. *Hensley*, 461 U.S. at 430 n.3, 436. The other factors to be considered as delineated by the Supreme Court are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Tolentino*, 45 F.3d at 652 (citing *Hensley*, 461 U.S. at 441). In sum, "[t]he standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999). The fee applicant

bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *Id.* (internal quotation and citations omitted).

  2. *Calculation of the Lodestar*

The Spuhlers seek fees for three attorneys and two support staff members. Specifically, they request 234.1 hours at a rate of $350.00/hour (for a total of $81,935.00) for Attorney Nathan DeLadurantey, 88.4 hours at a rate of $300.00/hour (for a total of $26,520.00) for Attorney Heidi Miller, 212.90 hours at a rate of $450.00/hour for Attorney Thomas J. Lyons, Jr. (for a total of $95,803.45), 5.6 hours at a rate of $125.00/hour (for a total of $700.00) for support staff member Ethan Webb, and 41.5 hours at a rate of $125.00/hour (for a total of $5,125.00) for legal assistant Andrea Weber. (Declaration of Nathan E. DeLadurantey ¶¶ 19–23, Docket # 132; Declaration of Thomas J. Lyons, Jr. ¶ 7, Docket # 131.)

  2.1 Hourly Rate

While State Collection does not challenge the hourly rate for the two support staff members (Webb and Weber), it challenges the hourly rates of the three attorneys. State Collection argues that the Spuhlers failed to submit any evidence, besides their own affidavits and citations to other cases, in support of the attorneys' claimed hourly rates. (Def.'s Br. at 12–13, Docket # 135.) The Spuhlers responded by providing the United States Consumer Law Attorney Fee Survey Report, last updated 2015–2016, which it argues

further supports their requested hourly rates. (Declaration of Thomas J. Lyons, Jr. ¶ 1, Ex. 1, Docket # 138-1.)

A reasonable hourly rate is:

[O]ne that is "derived from the market rate for the services rendered." We presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community."

*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal citations omitted). The court can apply other factors to determine an appropriate rate, such as the lawyer's years of experience. *See Houston v. C.G. Sec. Servs., Inc.*, 820 F.3d 855, 860 (7th Cir. 2016). The party seeking a fee award bears the burden of establishing the market rate for the work; if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).

Again, the Spuhlers state that their counsels' billing rates are as follows: $350.00/hour for Attorney DeLadurantey, a practitioner with approximately thirteen years of experience; $300.00/hour for Attorney Miller, a practitioner with approximately seven years of experience; and $450.00/hour for Attorney Lyons, a practitioner with approximately twenty-five years of experience. (DeLadurantey Decl. ¶ 10; Declaration of Heidi Miller, ¶ 12, Docket # 132-5; Lyons Decl. ¶ 4.) The Spuhlers argue these rates are reasonable, citing to DeLadurantey's declaration in which he states that his private paying clients regularly pay him $350.00/hour and pay Attorney Miller $300.00/hour. (DeLadurantey Decl. ¶¶ 18, 20); Lyons' declaration in which he states that his rate of between $400.00 to $450.00/hour has been approved by multiple courts in other districts

4

(Lyons Decl. ¶ 7); and a case in this district where the court awarded Attorney Miller fees at a rate of $300.00/hour for a default judgment (Docket # 132-5).

The Spuhlers also point to the Fee Survey, which several courts in this district have recognized as a reliable resource in determining the reasonableness of an attorney's hourly rate, particularly in conjunction with consideration of counsel's experience. *See Moreland v. Dorsey Thornton & Assocs., LLC*, No. 10-CV-867, 2011 WL 1980282, *3 (E.D. Wis. May 20, 2011) (relying on counsel's website, which lists the attorney profiles, along with the United States Consumer Law Attorney Fee Survey in determining that the requested hourly rate was reasonable); *House v. Shapiro & Price*, No. 10-CV-842, 2011 WL 1219247 (E.D. Wis. Mar. 30, 2011) (same); *Suleski v. Bryant Lafayette & Assocs.*, No. 09-C-960, 2010 WL 1904968 (E.D. Wis. May 10, 2010) (same). According to the Fee Survey, the median rate for attorneys handling credit rights cases in the Milwaukee area is $350.00/hour. (Docket # 138-1 at 372.)

Approximately one year ago, a court in this district, considering the same evidence the Spuhlers now put forward, set Attorney DeLadurantey's reasonable rate at $300.00/hour and Attorney Miller's reasonable rate at $220.00/hour. *Strohbehn v. Weltman Weinberg & Reis Co. LPA*, No. 16-CV-985-JPS, 2018 WL 1997989, at *4 (E.D. Wis. Apr. 27, 2018). In so doing, the court considered the fact that in May 2016, another court in this district found an hourly rate of $300.00 for Attorney DeLadurantey and $250 for Attorney Miller to be reasonable. *Id.* at *3 (citing *Gagliano v. State Collection Serv.*, No. 14-CV-1512, 2016 WL 2853538, at *2 (E.D. Wis. May 13, 2016)). The Spuhlers attempt to distinguish their case from *Gagliano*, noting that *Gagliano* was litigated approximately two years prior to

5

this action and was not a class action. (Pl.'s Br. at 14.) While *Gagliano* was filed two years prior, *Strohbehn* was litigated contemporaneously with the Spuhlers' case. While *Strohbehn* was also not a class action, I agree with the court's analysis in *Strohbehn* that to "achieve some level of consistency," *id.* at *4, the rates awarded in *Strohbehn* are appropriate. Thus, I will set Attorney DeLadurantey's rate at $300.00/hour and set Attorney Miller's rate at $220.00/hour.

As for Attorney Lyons, even considering the median rate for the Minneapolis area (where he is located), the average rate for an attorney handling credit rights cases is $350.00/hour. (Docket # 138-1 at 280.) A Minnesota court in 2017 noted that Attorney Lyons' rate of $450.00/hour was above the market average for Minnesota and reduced the rate to $350.00/hour. *Kuntz v. Messerli & Kramer*, No. 16-CV-2676, 2017 WL 3332222, at *2–3 (D. Minn. Aug. 4, 2017). Given the fact Attorney Lyons is a more experienced attorney than Attorneys DeLadurantey and Miller, I find that a reasonable rate for Attorney Lyons is $350.00/hour.

### 2.2 Number of Hours Expended

Five individuals spent a total of 582.5 hours litigating this case. While the Spuhlers agree to reduce their requested hours by 13.9 hours to account for the presence of multiple attorneys at depositions, they otherwise contend the hours spent were reasonable. (Pls.' Reply Br. at 8, Docket # 137.) State Collection argues that the hours expended were not reasonable and generally fall into six impermissible categories: block billing and/or vague entries; inter-office conferences; multiple timekeepers billing the same tasks; unnecessary tasks performed; excessive time entries; and time billed for administrative tasks. (Def.'s Br.

at 11–12.) State Collection proposes reducing the number of hours for DeLadurantey, Lyons, Miller, and Weber, from 576.9 to 151.39. (*Id.* at 25.) State Collection does not contest Webb's total requested fee of $700.00. (*Id.* at 26.)

While the Spuhlers are entitled to an award of attorneys' fees as the prevailing party, State Collection "is not required to pay for hours that are 'excessive, redundant, or otherwise unnecessary.'" *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012) (quoting *Hensley*, 461 U.S. at 434). Plaintiffs' counsel are expected to exercise "billing judgment" with respect to the hours requested, *Hensley*, 461 U.S. at 437, by "winnowing the hours actually expended down to the hours reasonably expended," *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999) (internal quotation and citation omitted). Hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute like the FDCPA. *Id.*

### 2.2.1 Block Billing

State Collection contends that the Spuhlers' counsel engaged in block billing, making it difficult to discern the reasonableness of their fees. The Spuhlers dispute that plaintiffs' counsel engaged in block billing. I find counsels' time entries rife with block-billed entries. Take, for example, Attorney Lyons' entry on July 14, 2017. He bills 4.30 hours as follows:

> Motion Practice
> Class cert reply memo/drafting and call to co-counsel about plan of attack – no limiting class definition any further. Then review the new documents bates # 001-401. Then resarch [sic] and find new 5th cir FDCPA post spokeo case Sayles, email to H the resaerch [sic] on spokeo cases and look for FDCPA classes.

(Docket # 131-2 at 8.) I count six distinct tasks stated in this entry. Or Attorney Lyons' entry on November 30, 2018 where he billed 2.66 hours as follows:

> Review text order from Court on plaintiff's incentive award and then do some research and digging and then call with Nathan about the same and the 7th Cir mediation problem what Patrick has created and then review Patrick email re same. Then review Court's order dated today on class notice and class time period.

(*Id.* at 16.) This entry contains five distinct tasks. The problem with block-billing like this is that it makes it nearly impossible to determine whether the amount of time spent on each individual task was reasonable.

While I cite two of the most egregious examples of Attorney Lyons' block billing, Attorney Lyons' billing entries frequently follow the format found in the following entry: "meeting with co-counsel to review all financial documents turned over by Tax preparer and creditors documents – <u>then</u> outline email for LR 37.1 to confront Defendant about missing documents. <u>Then</u> discuss class cert motion with Heidi and outline areas that need more cites." (Entry for May 1, 2017, Docket # 131-2 at 6) (emphasis added). The word "then" precedes a new, distinct task in many of Attorney Lyons' billing entries. (*See, e.g.*, entries on 8/18/2016, 10/10/2016, 11/15/2016, 11/22/2016, 12/2/2016, 12/12/2016, 1/11/2017, 3/2/2017, 4/19/2017, 5/24/2017, 7/20/2017, 11/2/2017, 11/7/2017, 8/14/2018, 8/23/2018.)

Attorney DeLadurantey also engages in block billing throughout the course of this litigation, most notably grouping together research and writing of briefs. These are separate tasks, and should be listed separately in order to determine whether a reasonable amount of time was spent on the independent tasks of research and writing.

As the Spuhlers state, there "is no requirement that billing entries be limited to one verb apiece." *In re Feggins*, No. 13-11319-WRS, 2016 WL 1068976, at *10 (Bankr. M.D.

8

Ala. Mar. 17, 2016). However, when there are multiple tasks in a single entry, there is no reasonable way to discern what time was spent on which task. There is a reason the American Bar Association, in an article entitled "5 Billing Tips for Young Lawyers," lists as its second tip to "avoid block billing."[1] Block billing makes it very difficult—for a client or the court—to discern whether a reasonable amount of time was spent on each task. Because Attorney Lyons' block billing does not allow for proper analysis of whether the time spent for those entries was reasonable, I will deduct 68.3 hours from Attorney Lyons' requested fees based on entries containing multiple tasks. *See Beach v. LVNV Funding, LLC*, No. 12-CV-778, 2013 WL 6048989, at *4 (E.D. Wis. Nov. 15, 2013).[2] I will also reduce Attorney DeLadurantey's requested hours by 52 hours to account for block billing.[3]

### 2.2.2 Inter-Office Conferences, Vague Entries, and Multiple Time-Keepers/Excessive Tasks

State Collection also takes issue with the Spuhlers' counsel billing for inter-office conferences, vague entries, and for multiple time-keepers billing for the same tasks (or generally billing excessively). While there is no "blanket rule according to which internal communication time never would be reimbursed," because such internal meetings are "not

---

[1] https://www.americanbar.org/groups/litigation/committees/commercial-business/practice/2017/5-billing-tips-for-young-lawyers/ (last visited May 21, 2019).
[2] I deducted the following entries I found to improperly contain multiple tasks: 8/18/2016, 9/19/2016, 10/10/2016, 11/15/2016, 11/22/2016, 12/2/2016, 12/12/2016, 12/16/2016, 1/11/2017, 1/12/2017, 3/2/2017, 4/19/2017, 4/20/2017, 5/1/2017, 5/6/2017, 5/24/2017, 7/14/2017, 7/20/2017, 10/26/2017, 11/2/2017, 11/7/2017, 11/16/2017, 11/22/2017, 12/8/2017, 12/11/2017, 1/11/2018, 3/29/2018, 8/1/2018, 8/6/2018, 8/14/2018, 8/22/2018, 8/23/2018, 8/24/2018, 8/25/2018, 8/29/2018, 9/3/2018, 9/4/2018, 9/5/2018, 9/6/2018, 10/29/2018, 10/30/2018, 11/1/2018, 11/2/2018, 11/10/2018, 11/30/2018, 12/3/2018, 12/19/2018, 12/27/2018, 1/2/2019, 1/15/2019, 1/23/2019, 1/28/2019.
[3] I deducted the following entries I found to improperly contain multiple tasks: 12/6/2018, 11/16/2018, 11/12/2018, 9/11/2018, 9/6/2018, 8/29/2018, 8/28/2018, 2/19/2018 (second entry), 10/28/2017 (first entry), 7/18/2017 (second and third entries), 7/17/2017 (second entry), 5/26/2017 (second entry), 5/25/2017 (second entry), 5/23/2017 (first entry), 5/12/2017 (first entry), 5/6/2017 (second entry), 4/17/2017 (second and third entries), 4/14/2017, 4/13/2017 (third entry), 3/21/2017 (first entry), 2/7/2017 (second entry), 1/12/2017 (second entry), 12/30/2016 (second entry), 12/27/2016, 12/9/2016 (first entry), 11/16/2016, 10/11/2016 (second entry), 10/10/2016, 10/6/2016, 10/4/2016, 8/16/2016.

always the model of efficiency," attorneys seeking reimbursement for internal meetings "should identify explicitly the subject matter of their discussions so that we may assess whether the amount of time recorded was 'reasonably expended.'" *Tchemkou v. Mukasey*, 517 F.3d 506, 511 (7th Cir. 2008). The most glaring issue with the billing for the inter-office meetings is that there are frequent discrepancies between the attorneys as to the meetings held. For example, Attorney Lyons billed 1.30 hours for meeting with Attorney DeLadurantey on February 27, 2017 in his office about a discovery plan (Docket # 131-2 at 5) whereas Attorney DeLadurantey billed 1.00 hour for the same meeting (Docket # 132-2 at 37). More confusingly, however, are multiple instances where Attorney Lyons billed for communication with "co-counsel," but no such entry appears on either Attorney DeLadurantey or Attorney Miller's time sheets. (8/18/2016, 9/19/2016.) Further, many of counsels' entries are vague (for example, Attorney DeLadurantey has many entries for calls or emails with co-counsel regarding "discussion of case" with no further explanation).

Beyond the conclusory assertion that counsels' time spent conferring amongst themselves developed a legal strategy that "ultimately won this case" (Pls.' Reply Br. at 8, Docket # 137), they do not identify explicitly the subject matter of their discussions. *See Tchemkou*, 517 F.3d at 511. I will deduct 8 hours from Attorney Miller and 14.9 hours from Attorney DeLadurantey for inter-office communication that appears duplicative or vague.[4]

---

[4] I struck Attorney Miller's entries on 8/19/2016, 9/16/2016, 10/10/2016, 12/7/2016, 12/8/2016, 12/13/2016, 12/27/2016, 2/23/2017, 2/27/2017, 3/2/2017, 30/20/2017, 4/10/2017, 4/17/2017, 4/19/2017, 5/1/2017, 6/5/2017, 6/14/2017, 6/22/2017, 7/20/2017, 8/23/2017 and Attorney DeLadurantey's on 2/5/2019, 12/17/2018, 11/30/2018, 11/27/2018, 11/16/2018, 11/5/2018, 10/30/2018, 10/15/2018, 9/27/2018, 9/11/2018, 9/7/2018, 9/6/2018, 9/5/2018, 9/4/2018, 8/28/2018, 8/27/2018, 8/24/2018, 8/23/2018, 8/20/2018, 8/9/2018, 8/9/2018, 8/8/2018, 8/2/2018, 3/12/2018, 12/18/2017, 12/11/2017, 11/2/2017, 11/1/2017, 10/31/2017, 6/7/2017, 5/26/2017, 5/25/2017, 5/24/2017, 5/23/2017, 5/22/2017, 5/19/2017, 5/17/2017, 5/8/2017, 5/6/2017, 5/5/2017, 4/28/2017, 4/25/2017, 4/20/2017, 2/27/2017, 2/1/2017, 1/25/2017, 12/6/2016, 9/21/2016.

Regarding the use of multiple time-keepers billing or generally billing excessively, I agree that it was unnecessary for two to three attorneys to participate in the preparation and attendance of the depositions taken in this case. Attorney Lyons either took or defended the depositions, so he can bill for his time. I will deduct 11 hours from Attorney Miller's time and 27.2 hours from Attorney DeLadurantey's time for preparation and attendance at the depositions. State Collection also generally argues that counsel spent an excessive amount of time researching and briefing in this matter and points out various other entries it believes are excessive. (Declaration of Patrick D. Newman, ¶ 4, Ex. C, Docket # 136-3.) For example, Attorney Lyons spent 1.01 hours finding a single case on February 1, 2017 and Attorney DeLadurantey spent 1.5 hours researching legal issues for the fee petition on January 28, 2019. State Collection's argument is well placed as to the few specific instances of excessive billing it points out in its exhibit; however, given that many of the entries were already struck because of block billing, I will not further strike the few entries that appear excessive.

State Collection also argues that Attorney Lyons' paralegal, Weber, billed excessive amounts of time for speaking with class members. (Def.'s Br. at 24.) More concerning than the amount of time spent, the billing entries are vague. For example, on December 14, 2018, Weber billed one hour for ten phone calls "explaining notice and what it is." (Docket # 131-2.) Was each telephone call six minutes long? Or on December 21, 2018, she billed 12 hours for "answering class member calls" during the preceding week. (*Id.*) How many calls did she answer? How long was each call? What was the nature of the calls? These entries are vague and will be struck. As such, I will deduct 41 hours of Weber's time.

### 2.2.3 Administrative Tasks

Finally, State Collection argues that counsel improperly billed attorney time for administrative tasks. The Seventh Circuit has recognized that certain tasks, such as updating a case list or calendar, constitute administrative, clerical, or secretarial tasks for which the attorney is not entitled to fees. *Spegon*, 175 F.3d at 553. A court in this district also found that tasks such as opening a file, making entries in the system, creating a client file, checking filing information, preparing correspondence to the process server, or updating the service chart are administrative tasks for which the attorney is not entitled to fees. *Walker v. United Financial Service*, No. 10-C-180, 2010 WL 4942008, *2 (E.D. Wis. Nov. 30, 2010). Although State Collection does point to a few entries that do indeed seem administrative (such as Attorney DeLadurantey's entry for .1 hours on November 20, 2017 for locating a filed claim and e-mailing it to co-counsel), because many of the entries have been otherwise stricken due to improper block billing and given that this was not a pervasive issue, I will not further deduct for administrative tasks.

### 2.3 The Lodestar

Thus, the lodestar is calculated as follows:

| Time Keeper | Hours Requested | Hours Awarded | Reasonable Rate | Total |
|---|---|---|---|---|
| Attorney DeLadurantey | 234.1 | 140 | $300/hour | $42,000.00 |
| Attorney Miller | 88.4 | 69.4 | $220/hour | $15,268.00 |
| Attorney Lyons | 212.9 | 144.6 | $350/hour | $50,610.00 |
| Ms. Weber | 41.5 | .5 | $125/hour | $62.50 |
| Mr. Webb | 5.6 | 5.6 | $125/hour | $700.00 |
| **Total** | | | | **$108,640.50** |

3. *Adjustment of the Lodestar*

While there is a strong presumption that the lodestar represents the reasonable fee, *Dague*, 505 U.S. at 562, once the lodestar is determined, the court may still adjust the fee upward or downward based on the *Hensley* factors listed earlier. The Supreme Court has cautioned that a request for attorneys' fees should not result in a second major litigation. *Hensley*, 461 U.S. at 437. However, the reason an attorneys' fee award is reviewed under a "highly deferential" standard is because the district court is in the best position to evaluate an attorney's merit in determining a reasonable fee, having presided over the action. *See Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). This case is a relatively straightforward, run-of-the-mill FDCPA case. The amended complaint has a single cause of action, alleging that a debt collection letter violated the FDCPA by failing to disclose the accrual of interest, by failing to delineate which part of the balance due was principle versus interest, and by improperly charging pre-judgment interest. (Docket # 18.) The amended complaint was a class action complaint, and briefing was completed on a motion to certify class, which was granted on October 26, 2017. (Docket # 74.) While the class certification briefing raised a standing issue pursuant to *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)—which at the time of briefing was a newer case—the briefing did not otherwise present overly unique or complicated issues. While the parties ran into some discovery disputes, with the Spuhlers filing two motions to compel in order to ascertain the names of specific consumers to determine whether certain consumers received multiple collection letters, thus diminishing the potential class size, State Collection conceded that the numerosity predicate

was satisfied. (Docket # 74 at 8.) Thus, this discovery litigation early on became much ado about nothing.

Where this case became complicated, however, was with a summary judgment process that became a procedural quagmire. State Collection moved for summary judgment dismissing the Spuhlers' amended complaint (Docket # 59), and the Spuhlers opposed the motion (Docket # 78). The Spuhlers' first two arguments were easily disposed of. I found that prejudgment interest pursuant to Wis. Stat. § 138.04 is available as a matter of law in Wisconsin on fixed and determinable claims, or where there is a reasonably certain standard for measuring damages. *Sgrignoli v. Paskin & Oberwetter Law Offices, Ltd.*, 96-C-841, 1997 U.S. Dist. LEXIS 24380, at *10–11 (W.D. Wis. Jan. 29, 1997) (citing *Weyenberg Shoe Mfg. Co. v. Seidl*, 140 Wis. 2d 373, 389, 410 N.W.2d 604 (Ct. App. 1987)). (Docket # 84 at 5–8.) While the parties' summary judgment briefing was pending, the Seventh Circuit decided *Aker v. Americollect, Inc.*, 854 F.3d 397, 400 (7th Cir. 2017), in which it found that "neither state nor federal law forbids dunning letters that demand 5% interest from debtors in Wisconsin." I also quickly disposed of the Spuhlers' argument regarding State Collection failing to break out principle and interest, as the Seventh Circuit's decision in *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) clearly states that a debt collector need not break out principle and interest. (Docket # 84 at 9–11.)

The gravamen of the Spuhlers' argument was that the letter violated §§ 1692e and 1692f by failing to disclose the fact that interest was accruing on the account. Neither party, however, properly cited or argued the "three category" framework articulated by the Seventh Circuit in *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 322–23 (7th Cir.

2016) and I failed to address the issue under this standard. I initially denied State Collection's summary judgment motion as to this issue, finding that the Spuhlers created a triable issue of fact as to whether the collection letter was confusing or unclear on its face. State Collection moved for reconsideration, and the Spuhlers effectively attempted to belatedly move for summary judgment in their favor through a surreply to the reconsideration motion. (Docket # 102 at 12.) Upon reconsideration, with the proper three category framework before me, I *sua sponte* granted summary judgment in the Spuhlers' favor. (*Id.* at 12–13.) The errors made during the summary judgment proceedings caused State Collection to file an appeal, which was ultimately dismissed for lack of jurisdiction. (Docket # 117.) Thus, the litigation is this case was complicated based on the failure of both parties and the court to properly analyze the issue under the "three category" framework in the first instance. Given that fault does not lie solely with the plaintiffs, I do not find this justifies a downward adjustment.

Nor do I find a downward adjustment warranted based on the degree of success on the merits. The Spuhlers raised a single cause of action in their amended complaint, arguing three distinct ways State Collection violated the FDCPA. The Spuhlers argue that because the three issues are not distinct in all respects and are interrelated and intertwined, they cannot be excised. (Pls.' Reply Br. at 10.) A downward adjustment is not warranted for unsuccessful claims that are based on interrelated and intertwined theories. *See Hensley*, 461 U.S. at 434–37, 440. This case is unique because two of the theories raised by the Spuhlers—(1) that State Collection was not entitled to collect prejudgment interest and (2) that State Collection needed to break out interest from principle—are matters of relatively

15

settled law. Wisconsin law allows prejudgment interest, *Aker*, 854 F.3d at 400, and the Seventh Circuit in *Hahn* states that a debt collector may give the "bottom line" without breaking out principle and interest, *Hahn*, 557 F.3d at 757. Thus, a reasonable argument could be made that a downward adjustment is warranted on that basis. However, given that *Hensley* provides that merely raising different theories of violation of the FDCPA (only one of which was successful) based on the same core facts should not warrant a downward reduction simply because the court did not adopt each contention raised, *see id.* at 440, I will not reduce the lodestar on this basis.

I do find, however, that a downward adjustment is warranted based on the experience, reputation, and ability of the plaintiffs' attorneys. While the Spuhlers' argument regarding State Collection's failure to alert them that interest was accruing was clearly a colorable argument based on the Seventh Circuit case law, *but see Bazile v. Fin. Sys. of Green Bay, Inc.*, No. 18-CV-1415, 2019 WL 652421 (E.D. Wis. Feb. 15, 2019) (finding the FDCPA does not require debt collector to inform debtor whether the balance due is or is not accruing interest), the other two arguments were less so. Given that Attorneys Lyons and DeLadurantey are experienced attorneys specializing in creditor rights litigation and even accounting for the procedural twists in this case, it should not have taken them over $200,000.00 to litigate this FDCPA case. I find that a downward adjustment is warranted given counsels' experience, the nature of this litigation, and the arguments made. Accordingly, I will award $80,000.00 in attorneys' fees.

Awarding fees in the amount of $80,000.00 is also more aligned with awards in other FDCPA cases, another *Hensley* factor to consider. As surveyed by two courts in this district,

relatively straightforward FDCPA cases proceeding through trial produce awarded attorneys' fees ranging from $5,827.50 on the low end to $81,569.97 on the high end. *See Gagliano*, 2016 WL 2853538, at *2–6; *Strohbehn*, 2018 WL 1997989, at *4–7. Awards in the $40,000.00 to $60,000.00 range were most common. *See id.* While this case was a class action and thus undoubtedly created more work for the attorneys, it did not proceed to trial and was decided on summary judgment. However, as detailed above, the case had complications that also created more work for the plaintiffs, though the exact amount is difficult to quantify. For these reasons, plaintiffs are awarded $80,000.00 in attorneys' fees.

    *4.    Costs*

The Spuhlers also seek costs in the amount of $34,341.35. While the court can assess costs in the first instance, 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1), it is the practice in this district to first seek relief from the Clerk of Court pursuant to Civil L.R. 54 (E.D. Wis.). *See Strohbehn*, 2018 WL 1997989, at *7. Should the parties seek review of the Clerk of Court's determination, they may do so pursuant to Civil L.R. 54(c).

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiffs' motion for attorneys' fees and costs (Docket # 129) is **GRANTED IN PART AND DENIED IN PART**. The plaintiffs are awarded $80,000.00 in attorneys' fees. The plaintiffs' request for costs is denied without prejudice.

Dated at Milwaukee, Wisconsin this 21st day of May, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge